

# Office of the Attorney General
## State of Texas

DAN MORALES
ATTORNEY GENERAL

November 17, 1992

Honorable Bill G. Carter
Chairman
Public Safety Committee
Texas House of Representatives
P. O. Box 2910
Austin, Texas 78768-2910

Opinion No. DM-182

Re: Whether Tax Code sections 154.101(h) and 155.041(h), establishing the Tax Code as the exclusive authority for the issuance of permits for engaging in business as a retailer of cigarettes and other tobacco products, preempt provisions of a city ordinance licensing tobacco product retailers (RQ-300)

Dear Representative Carter:

You have requested an opinion from this office as to whether sections 154.101(h) and 155.041(h) of the Texas Tax Code, establishing that permits for engaging in business as a distributor, wholesaler, bonded agent, or retailer of cigarettes and other tobacco products shall be governed exclusively by the Tax Code, preempt a home-rule city ordinance establishing a licensing scheme for tobacco products retailers.

Chapters 154 and 155 of the Tax Code levy a tax on the sale of cigarettes and other tobacco products, and establish a system for the administration, collection, and enforcement of the tax. A crucial mechanism for the enforcement of this tax is the requirement that all distributors, wholesalers, bonded agents and retailers of cigarettes and other tobacco products have a permit, issued by the state treasurer, to engage in business in their respective capacities. *See* Tax Code § 154.101(a). The treasurer may deny a permit application upon finding that the applicant's business premises are not adequate to protect the tobacco products or revenue stamps, that the applicant has not been truthful in the permit application, or that the applicant has previously violated provisions of the chapters. *Id.* §§ 154.107, 155.0481. Suspension or revocation of a permit may occur if the treasurer finds that the permit holder violated provisions of the relevant Tax Code chapters or an administrative

rule promulgated under them. *Id.* §§ 154.114, 155.059. Recently, the legislature amended chapters 154 and 155 to provide the following:

> Permits for engaging in business as a distributor, wholesaler, bonded agent, or retailer *shall be governed exclusively by the provisions of this code.*

Tax Code §§ 154.101(h), 155.041(h) (emphasis added); Acts 1991, 72d Leg., ch. 409, §§ 17, 48 (eff. June 7, 1991).[1]

The City of Arlington has enacted Ordinance No. 91-15, codified as the Code of the City of Arlington, "Health" Chapter, Article XI (effective August 1, 1991). The ordinance is intended "to protect the health, safety, and welfare of persons under the age of eighteen (18) from the health risks caused by the use of tobacco products." CODE OF THE CITY OF ARLINGTON, "Health" Chapter, art. XI, § 11.02 (1991). To accomplish this goal, the ordinance requires tobacco products retailers to obtain a "tobacco dealer's license" from the city. As you state in your brief, the licensing provisions allow the city "to prevent a retailer, by license suspension or revocation, from selling tobacco products after one or more instances of tobacco sales to minors." Once the administrator of the licensing program revokes a license held by a retailer, that retailer must remove all tobacco products from the place of business. *Id.* § 11.15(C). Failure to comply with this or other provisions of the ordinance is punishable by a fine not to exceed $2000. *Id.* §§ 11.15(D), (E), 11.16(A).

---

[1]In addition, section 161.081 of the Health and Safety Code provides that the sale of cigarettes and other tobacco products to a minor constitutes a Class C misdemeanor:

> (a) A person commits an offense if the person, as a commercial enterprise:
>
> (1) sells or gives or causes to be sold or given a cigarette or other tobacco products to any person he knows is younger than 18 years of age; or
>
> (2) sells or gives or causes to be sold or given a cigarette or other tobacco product to any person, knowing that the person . . . intends to deliver it to a person younger than 18 years of age.
>
> (b) An offense under this section is a Class C misdemeanor.

Health & Safety Code § 161.081(a), (b); *see also* Penal Code § 12.23 (Class C misdemeanors).

The City of Arlington is a home-rule city. The Texas Constitution grants such cities all the power of self-government not *expressly* denied them by the legislature. Tex. Const. art. XI, § 5; *City of Dallas v. Dallas Merchants & Concessionaires Ass'n*, 823 S.W.2d 347 (Tex. App.--Dallas 1991, writ granted). The Texas Constitution prohibits a home-rule city from enforcing any legislation inconsistent with state laws or the state constitution. Tex. Const. art. XI, § 5. The Texas Supreme Court has instructed that, in determining whether an ordinance is fatally inconsistent with state law on the same subject matter, courts must seek to construe the two in a way that will leave both in effect, if possible. *City of Richardson v. Responsible Dog Owners of Texas*, 794 S.W.2d 17 (Tex. 1990). Moreover, it is well established that "legislative intent to limit the broad powers of home-rule cities must appear with unmistakable clarity." *City of Dallas*, 823 S.W.2d at 353 (citing *Corpus Christi v. Continental Bus. Sys.*, 445 S.W.2d 12, 17 (Tex. Civ. App.--Austin 1969), *writ ref'd n.r.e. per curiam*, 453 S.W.2d 470 (Tex. 1970)).

The plain language of the relevant Tax Code provisions clearly demonstrates the legislature's intent to prohibit local governments, including home-rule cities, from using a licensing system to regulate tobacco sales. As noted above, the Tax Code provides that "[p]ermits for engaging in [tobacco sales] *shall be governed exclusively by the provisions of this code.*" Tax Code §§ 154.101(h), 155.041(h) (emphasis added). In addition, legislative history reveals that the legislature intended to exclude local governments from the regulation of the tobacco industry by permits. Senator Teel Bivins, in introducing sections 154.101(h) and 155.041(h) before the Senate State Affairs Committee, testified as follows:

> This amendment makes it clear that it is only the Treasurer's office who is to administer these permits and that local governments are not to be involved in this permitting process.

Hearings on S.B. 689 Before the Senate State Affairs Comm., 72d Leg. (Apr. 8, 1991) (statement of Senator Teel Bivins) (tapes available from Senate Staff Services). It has been suggested that the Tax Code provisions and the city ordinance can be harmonized because although both the statute and the ordinance require a retailer to obtain a document before selling tobacco products, the two permitting processes address distinct governmental concerns -- *i.e.*, revenue collection in the case of the Tax Code provisions, and health regulation in the case of the city ordinance. We believe, however, that the legislature, in enacting sections 154.101(h) and 155.041(h) of the Tax Code, intended to vest the state treasurer with the sole power to determine which businesses are entitled to permits to sell tobacco

products because a dual permit system would confuse and interfere with the tax collection process. Thus, regardless of the city ordinance's regulatory purpose, we believe its permitting scheme is preempted by the Tax Code.

## S U M M A R Y

A home-rule city ordinance, which establishes a licensing system for the retail sale of cigarettes and other tobacco products, is preempted by sections 154.101(h) and 155.041(h) of the Tax Code, which provides that permits to engage in business as a retailer of cigarettes and other tobacco products shall be governed exclusively by the Tax Code.

Very truly yours,

DAN MORALES
Attorney General of Texas

WILL PRYOR
First Assistant Attorney General

MARY KELLER
Deputy Assistant Attorney General

RENEA HICKS
Special Assistant Attorney General

MADELEINE B. JOHNSON
Chair, Opinion Committee

Prepared by Mary R. Crouter
Assistant Attorney General