
June 27, 2003

The Honorable Frank Madla
Chair, Intergovernmental Relations Committee
Texas State Senate
P.O. Box 12068
Austin, Texas 78711-2068

Opinion No. GA-0082

Re: Whether the City of San Antonio may impose right-of-way fees against a metropolitan transit authority created under chapter 451 of the Transportation Code (RQ-0020-GA)

Dear Senator Madla:

You ask whether the City of San Antonio (the "City") may require VIA Metropolitan Transit Authority ("VIA") to pay a set fee for the installation and relocation of bus stops within the City's jurisdiction.

VIA, a transit authority created under chapter 451 of the Transportation Code, is authorized to "acquire, construct, develop, own, operate, and maintain a transit authority system in the territory of the authority, including the territory of a political subdivision." TEX. TRANSP. CODE ANN. § 451.056(a)(1) (Vernon 1999). To fulfill this purpose, a transit authority may:

> (1) use a public way, including an alley; and

> (2) directly, or indirectly by another person, relocate or reroute the property of another person or alter the construction of the property of another person.

*Id.* § 451.058(a). Furthermore, a transit authority that relocates or reroutes property is responsible for fully reimbursing the expenses of the property owner:

> (d) If an authority, through the exercise of a power under this chapter, makes necessary the relocation or rerouting of, or alteration of the construction of, a road, alley, overpass, underpass, railroad track, bridge or associated property, an electric, telegraph, telephone, or television cable line, conduit, or associated property, or a water, sewer, gas, or other pipeline or associated property, the relocation or rerouting or alteration of the construction must be accomplished at

> the sole cost and expense of the authority, and damages that are incurred by an owner of the property must be paid by the authority.

*Id.* § 451.058(d).

You indicate that, effective May 1, 2001, the City adopted an ordinance providing for "new right-of-way management regulation to manage construction, excavation and placement of utilities; [and] establishing fees."[1] "Right of way" or "public right of way" is defined in the ordinance as:

> the surface of, and the space above and below, any Street, road, highway, freeway, lane, path, drainage way, channel, fee interest, public way or place, sidewalk, alley, boulevard, parkway, drive, or other easement now or hereafter held by the City or over which the City exercises any rights of management or control and shall include but not be limited to all easements now held, or hereafter held, by the City but shall specifically exclude private property.

SAN ANTONIO, TEX., ORDINANCE 93319, § 29-107(bb) (Jan. 25, 2001) at 3 ("amending article IV, section 29-l06 *et. seq.* of the City Code"). "Right of Way–(ROW) User" means "a Person, its successors and assigns, that uses the Right of Way for purposes of work, Excavation, provision of Services, or to install, construct, maintain, repair Facilities thereon, including, but not limited to, landowners and Service providers." *Id.* § 29-107(cc), at 3. "Person," defined as "any person, company, partnership, agency or other public or private entity, excepting the City," *id.* § 29-107(v), is sufficiently broad to encompass VIA. Section 29-112 of the ordinance provides that "[a]ll ROW users must register with the City within thirty (30) days of the effective date of this Ordinance." *Id.* § 29-112, at 5. "No ROW user shall be authorized to utilize the Right of Way in any capacity or manner without registering and obtaining the necessary Right of Way Permit from the City." *Id.* Section 29-117 of the ordinance provides that, "[a]t the time the Permit is issued, the Applicant shall pay a nonrefundable Application Fee in an amount as provided for in this Chapter." *Id.* § 29-117(B), at 6.

You state that "[s]ome of VIA's operations include the construction of amenities such as the placement of bus pads, benches, [and] poles . . . within the city right of ways." Request Letter, *supra* note 1, at 1. "VIA will soon begin the process of installing and/or relocating approximately 400 bus sites. Under the City right-of-way ordinance, VIA would be compelled to pay $225.00 for each of the 400 sites it proposes to construct." *Id.* at 1-2. "It is the City's position that since the placement of these amenities involve some construction and minor excavation (i.e. the pouring of concrete for the slabs), then VIA is compelled to pay such fees under the ordinance." *Id.* at 1. VIA contends first that, because the ordinance applies only to "certificated telecommunications providers," it is not applicable to VIA. *Id.* at 2.

---

[1]Letter from Honorable Frank Madla, Chair, Senate Intergovernmental Relations Committee, to Honorable Greg Abbott, Texas Attorney General, at 1 (Feb. 24, 2003) (on file with Opinion Committee) [hereinafter Request Letter].

The ordinance that amends article IV, chapters 29-106 through 29-194, does in fact appear to be directed at "certificated telecommunications providers" ("CTPs"). The preamble states, in relevant part:

> WHEREAS, Section 283 of the Texas Local Government Code (the "Act") sets forth certain regulations governing municipalities and Certificated Telecommunications Providers ("CTPs"). It is the City's intent to comply with these regulations; and
>
> WHEREAS, the purpose of the Act is to establish a uniform method of compensation for the use of public Right of Way by CTPs that is fair and reasonable, administratively simple, competitively neutral (relative to all CTPs), nondiscriminatory, and consistent relative to the municipalities and CTPs; and
>
> WHEREAS, this Ordinance promotes compliance with the Texas Utilities Code . . . .

SAN ANTONIO, TEX., ORDINANCE 93319 (Jan. 25, 2001) at 1. For purposes of section 283 of the Local Government Code, a "certificated telecommunications provider" is defined as "a person who has been issued a certificate of convenience and necessity, certificate of operating authority, or service provider certificate of operating authority by the [Public Utilities Commission] to offer local exchange telephone service." TEX. LOC. GOV'T CODE ANN. § 283.002(2) (Vernon Supp. 2003).

VIA, a transit authority, is obviously not a "certificated telecommunications provider" under this definition. Although the preamble references CTPs, the text of the ordinance, nonetheless, is specifically made applicable to "ROW [right-of-way] users." SAN ANTONIO, TEX., ORDINANCE 93319, § 29-112 (Jan. 25, 2001) at 5. The City has construed the ordinance to include VIA. Because this office does not ordinarily construe municipal ordinances, we defer to the City's view that VIA is included within the ordinance. See Tex. Att'y Gen. Op. No. JC-0143 (1999) at 3 ("this office does not generally construe city charters or ordinances"); Tex. Att'y Gen. LO-98-058, at 3 ("this office ordinarily does not construe municipal ordinances").

VIA next contends that it is exempted from the fees established by the ordinance by virtue of section 451.058 of the Transportation Code, which, as we have noted, authorizes VIA to "use a public way," and to "relocate or reroute the property of another person or alter the construction of the property of another person." TEX. TRANSP. CODE ANN. § 451.058(a) (Vernon 1999). That statute also requires that such "relocation or rerouting or alteration of the construction must be accomplished at the sole cost and expense of the authority, and damages that are incurred by an owner of the property must be paid by the authority." Id. § 451.058(d).

The City, like every home-rule city, derives its power directly from article XI, section 5 of the Texas Constitution. A home-rule city need not look to the legislature for grants of power but only for limitations on its powers. See Dallas Merchs. & Concessionaires Ass'n v. City of Dallas,

852 S.W.2d 489, 490-91 (Tex. 1993). Any such limitation must appear with unmistakable clarity, either expressly or by necessary implication from the constitution or general statutes. *See id.* at 491. In *City of Richardson v. Responsible Dogs Owners of Tex.*, 794 S.W.2d 17 (Tex. 1990), the Texas Supreme Court upheld a City of Dallas ordinance even though there was "a small area of overlap" between "the provisions of [a] narrow statute and [a] broader ordinance." *Id.* at 19. The statute in that case, section 42.12 of the Penal Code, was limited to provisions for the restraint of dogs. In addition, the statute was "essentially a 'first bite' law which makes it an offense only if a person keeps a dog that has actually engaged in vicious conduct and fails to restrain the dog or obtain the required insurance coverage within sixty days of the dog's vicious conduct." *Id.* By contrast, "the ordinance applies to any animal which *may* present a threat to the safety and welfare of the City's citizens; its enforcement does not depend on the dog having already bitten someone." *Id.*

As was the case in *City of Richardson*, the ordinance under review here is more comprehensive than the reimbursement of relocation and rerouting costs contemplated by section 451.058(d) of the Transportation Code. As we have indicated, section 29-117 of the ordinance requires any "person" to obtain a permit that authorizes "excavation in or under the . . . Right of Way." SAN ANTONIO, TEX., ORDINANCE 93319, § 29-117 (Jan. 25, 2001) at 6. An applicant for a permit must pay a nonrefundable application fee. In addition, "[n]o fee or requirement authorized or imposed pursuant to this chapter shall be construed to affect or alter in any way any obligation of public and private Utilities with Facilities installed in any Right of Way to relocate the Facilities at no cost to the City, subject to state law, if applicable . . . ." *Id.* § 29-117(E), at 6. Thus, the City contends that the fee includes "inspection of the permitted use, proper excavation and proper repair by the user."[2]

The cost of "proper excavation and proper repair by the user" is already subsumed within that portion of section 451.058(d) of the Transportation Code, which requires transit authorities to reimburse property owners for specific expenses. *See* TEX. TRANSP. CODE ANN. § 451.058(d) (Vernon 1999) ("the relocation or rerouting of, or alteration of the construction of . . . must be accomplished at the sole cost and expense of the authority, and damages that are incurred by an owner of the property must be paid by the authority"). The cost of "inspection of the permitted use," however, is not included within the list of charges that VIA is obligated to pay. Because section 451.058(d) prescribes specific costs that must be assumed by VIA, it necessarily follows that other charges may not be assessed. Thus, under the standard of the *Dallas Merchants* case, section 451.058(d) implicitly preempts "with unmistakable clarity" the imposition of inspection fees. We conclude that the City may not require VIA to pay a fee of $225.00 for each of the 400 sites it proposes to install or construct.

---

[2]Brief from Andrew Martin, City Attorney, City of San Antonio, to Honorable Greg Abbott, Texas Attorney General at 1 (Apr. 8, 2003) (on file with Opinion Committee).

## S U M M A R Y

Section 451.058(d) of the Transportation Code requires a transit authority to pay all construction, alteration, and rerouting costs associated with the installation and relocation of bus stops, and any damages incurred. Because the Transportation Code permits the imposition of only the specific charges listed therein, the City of San Antonio may not by ordinance require the VIA Metropolitan Transit Authority to pay duplicative or additional fees associated with such construction.

Very truly yours,

GREG ABBOTT
Attorney General of Texas

BARRY R. MCBEE
First Assistant Attorney General

DON R. WILLETT
Deputy Attorney General for Legal Counsel

NANCY S. FULLER
Chair, Opinion Committee

Rick Gilpin
Assistant Attorney General, Opinion Committee